265 So.2d 821 (1972)
George KARAM, Plaintiff-Appellee,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., Defendant-Appellant, and
A. E. Darbonne, Jr.
No. 3926.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1972.
Rehearing Denied September 13, 1972.
Writ Granted October 19, 1972.
*822 Shelton & Cline by Thomas R. Shelton, Rayne, for defendant-appellant.
Young & Burson by J. Nilas Young, Eunice, for plaintiff-appellee.
Mouton, Roy, Carmouche & Hailey by Harmon F. Roy, Lafayette, for defendant-appellee.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
George Karam instituted this action to recover the amount which he paid to third persons as damages resulting from the explosion of a hot water tank in a laundromat operated by him. The suit was filed against plaintiff's insurance agent, A. E. Darbonne, Jr., and the latter's "Errors and Omissions" insurer, St. Paul Fire & Marine Insurance Company.
The defendants filed a third party action against Maryland Casualty Company, demanding that judgment be rendered solely against that defendant in the event it is determined that Darbonne was negligent and in error. Maryland Casualty Company filed a reconventional demand against Darbonne, demanding indemnification for attorney's fees, expenses and costs.
Judgment was rendered by the trial court in favor of plaintiff and against defendants for the amount claimed. The judgment also rejected the third party demands of Darbonne and St. Paul Fire & Marine Insurance Company. Defendant, St. Paul Fire & Marine Insurance Company, has appealed.
The issues presented are: (1) Was Darbonne negligent in having failed to procure for Karam a liability policy with property damage liability limits of $100,000.00, instead of $10,000.00? (2) If he was negligent in that respect and plaintiff sustained a loss as a result of that negligence, is plaintiff entitled to recover from Darbonne and the latter's errors and omissions insurer, or is his sole recourse against Maryland Casualty Company?
In 1968, plaintiff operated a laundromat in Evangeline Parish. A hot water tank in that establishment exploded on February 20, 1968, and thereafter two suits for property damages allegedly caused by that explosion were instituted against Karam and his liability insurer, Maryland Casualty Company. These two damage suits were settled by compromise agreement for the sum of $18,500.00. Maryland Casualty paid $10,000.00 of that amount, and Karam paid the remaining $8,500.00. No question has been raised as to the reasonableness of that compromise settlement.
At the time this explosion occurred there was in effect a policy of liability insurance issued by Maryland Casualty Company insuring Karam against liability, but providing coverage up to a maximum limit of only $10,000.00 for property damage liability. Karam had obtained that policy through defendant Darbonne, who was doing business as Oberlin Insurance Agency.
For several years prior to February 20, 1968, Karam had procured his insurance coverage through Darbonne. Before this accident occurred Karam had asked Darbonne to issue a general liability policy with "maximum coverage." Darbonne had authority to write such a policy, with Maryland Casualty as the insurer, providing coverage for property damage liability up to a limit of $100,000.00, and he intended to procure a policy with that coverage for Karam. In writing to Maryland Casualty Company for the policy, however, he inadvertently, or through error, requested *823 that a policy be issued to Karam providing maximum coverage for property damage liability of only $10,000.00. The policy was issued by Maryland Casualty with the lower limit of liability, as requested, and neither Karam nor Darbonne realized that the smaller limits of coverage had inadvertently been issued until the above mentioned loss occurred.
Two suits for damages arising out of that explosion were filed against Karam and his insurer. When the suits were settled by compromise agreement, Maryland Casualty refused to pay more than the $10,000.00 limit specified in the policy. Since the insurer would pay only $10,000.00 of the amount of the compromise settlement, Karam paid the balance of $8,500.00, and he instituted this suit to recover that sum from Darbonne and the latter's errors and omissions insurer, St. Paul Fire & Marine.
The trial judge concluded that Darbonne was negligent in having failed to issue to Karam a liability policy providing property damage liability coverage up to $100,000.00, and that Darbonne and his errors and omissions insurer, St. Paul Fire & Marine, are liable to plaintiff for the loss which the latter sustained as a result of that negligence. He held that Maryland Casualty is not liable for any part of the loss sustained by plaintiff. Judgment thus was rendered in favor of plaintiff and against defendants, Darbonne and St. Paul, for $8,500.00. As we have already noted, St. Paul Fire & Marine has appealed.
Defendants contend primarily that Karam did not request liability insurance coverage up to $100,000.00 prior to the accident, and that Darbonne did not lead him to believe that he had coverage up to that amount.
Darbonne conceded that before the loss occurred plaintiff requested as much coverage as he could get, and that Darbonne had authority to write or was able to procure property damage liability coverage with limits of $100,000.00. Darbonne stated that he wanted and intended to write or procure the policy for Karam providing coverage with limits of $100,000.00, that he thought that he had done so, and that he did not discover until after the loss had occurred that he inadvertently had obtained a policy for plaintiff which provided a $10,000.00 limit of liability instead of the larger limit which had been intended. Darbonne testified that "thats what I wanted to write it for $100,000.00. Thats what he wanted." He stated that he delivered the policy to Karam, "leaving him to believe with the representation that it was $100,000.00 property damage policy," and that "Well, I feel like it was an error on my part and I wrote that letter and I probably made a mistake in writing Ten Thousand ($10,000.00) Dollars. . . . I feel like I was in error probably."
Plaintiff Karam testified, "I thought I had the maximum I could get, which was One Hundred Thousand ($100,000.00) Dollars."
The trial judge concluded that "A. E. Darbonne committed an error when he failed to deliver to plaintiff Karam $100,000.00 liability and ordered only $10,000.00 of insurance instead," and that "the evidence clearly establishes negligence on the part of the agent." We agree with these findings. Our conclusion is that Darbonne was negligent in failing to procure a policy with a limit of liability of $100,000.00, and that his negligence in that respect caused the loss which plaintiff has sustained.
The law is settled that an insurance agent or broker who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance and to seasonably notify the client if he, the agent or broker, is unable to or does not obtain the insurance requested. A prospective insured may recover the loss which he sustains as a result of the insurance agent's failure to procure the desired coverage, when the actions of the agent are shown to be such as to warrant an assumption by the insured that he was adequately *824 covered by suitable insurance. Brown v. Stephens Buick Co., 139 So.2d 579 (La.App. 4 Cir. 1962); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3 Cir. 1963); Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3 Cir. 1970).
Under these established rules and the facts presented here, we think plaintiff is entitled to recover the loss which he sustained because of Darbonne's error in procuring a policy providing coverage only up to $10,000.00, instead of $100,000.00, for property damage liability.
Defendants contend, however, that an agency relationship existed between Darbonne and Maryland Casualty Company, that Darbonne was acting within the scope of his authority as an agent in obtaining the policy, and that the principal, Maryland Casualty, rather than the agent Darbonne, is liable for the damages suffered by plaintiff. We find no merit to that argument.
Darbonne operated a general, independent insurance agency. He acted as broker or agent for various prospective insureds, and he placed the insurance with different companies. One of the insurers he represented was Maryland Casualty Company. We gather from the evidence that he was not employed exclusively by Maryland Casualty Company, and he was not an agent solely for that insurer. Karam did not specify that the insurance was to be placed with Maryland Casualty, or with any other designated insurer. We assume that when Darbonne undertook to procure insurance coverage for Karam, he could have placed all of the coverage with another company, or he could have placed all or a part of it with Maryland Casualty.
There was no negligence on the part of Maryland Casualty Company. That insurer issued a policy exactly as requested by Darbonne. The policy was sent to Darbonne, and Darbonne forwarded it by mail to Karam. After the loss occurred and the parties discovered the error which had been made, Darbonne requested that the coverage be increased to a limit of $100,000.00, and Maryland Casualty promptly issued an endorsement increasing the coverage to the larger amount.
There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance. Foster v. Nunmaker Discount Company, 201 So. 2d 215 (La.App. 4 Cir. 1967); Security Transfer Company v. Insured Lloyds Company, 225 So.2d 284 (La.App. 4 Cir. 1969); Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 3491; Appleman, Insurance Law and Practice, Sec. 8726; Couch on Insurance 2d, Sec. 25:99-25:101.
Articles 3016 and 3017 of the Louisiana Civil Code provide:
"Art. 3016. The broker or intermediary is he who is employed to negotiate a matter between two parties, and who, for that reason, is considered as the mandatary of both."
"Art. 3017. The obligations of a broker are similar to those of an ordinary mandatary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one more than another."
In Foster v. Nunmaker Discount Company, supra, our brothers of the Fourth Circuit Court of Appeal said:
"We must now decide just what duty the Carver Agency had toward the Plaintiff. To do this we must first determine the relationship between the parties.

*825 From the record it is obvious that the Carver Agency was an insurance `broker' rather than an exclusive agent for Marquette Casualty Company.
"We conclude that the Carver General Insurance Agency was an agent of the Plaintiff and owed him a duty to inform him that the contract of insurance had been cancelled failing in which it breeched its fiduciary duty, hence is liable for the resulting damages."
The same court, in Security Transfer Company v. Insured Lloyds Company, supra, held:
"We agree with the holding of the Trial Judge that under the proof adduced in this case Leaman & Reynolds Inc. was nothing more than a broker in placing insurance of this type and as such was acting as the agent of Security Van Lines and not as the agent of Insured Lloyds."
We think the applicable law is correctly stated in Appleman, Insurance Law and Practice, Sec. 8725, as follows:
"A person delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent, and not a broker. The fundamental distinction in the legal result is that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not; the broker representing the insured for the purpose of procuring the policy, and the insurer only in order to receive and transmit the premium."
In the instant suit Darbonne was a broker or intermediary, as those terms are used in the above mentioned authorities. As such, he occupied the dual capacity of serving as agent for both parties, Karam and Maryland Casualty, in some matters relating to this insurance transaction. We find, however, that in procuring the policy of insurance which was in effect when the loss occurred, Darbonne acted solely as agent for Karam and not as agent for Maryland Casualty Company. Darbonne's negligence in failing to specify the correct limits of liability in applying for the policy which he procured for Karam thus is not imputable to Maryland Casualty Company. Maryland Casualty Company, therefore, is not liable for the loss which plaintiff sustained.
Our ultimate conclusion is that there is no error in the judgment rendered by the trial court.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.